**REESE LLP**
Michael R. Reese (SBN 206773)
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Darren Wong individually, and on behalf of those similarly situated,

Plaintiff,

v.

Old Lyme Gourmet Company (d/b/a Deep River Snacks),

Defendant.

CASE NO. 20-cv-7095

**CLASS ACTION COMPLAINT**

**Demand for Jury Trial**

Plaintiff Darren Wong ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Old Lyme Gourmet Company, doing business as Deep River Snacks (together, "Defendants"), and alleges the following based upon Plaintiff's own personal knowledge and the investigation of Plaintiff's counsel. Plaintiff believes substantial evidentiary support exists for the allegations set forth herein and seeks a reasonable opportunity for discovery.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d) because the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and both Plaintiff and other members of the putative Class are citizens of States different from Defendants. Furthermore, Plaintiff alleges "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

2. This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: Plaintiff's claims arise out of Defendants' conduct within this jurisdiction, including Defendants' placement of deceptive "Non GMO Ingredients" seal of approval representations on the labels of the products at issue, upon which Plaintiff relied when Plaintiff purchased the products in C.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchase of Defendants' products in this District based on Defendants' deceptive "Non GMO Ingredients" representations.

**SUBSTANTIVE ALLEGATIONS**

4. This is a proposed class action against Defendants for misleading consumers about Defendants' products that bear the following "Non GMO Ingredients" certificate of approval ("Seal") on the packaging (collectively, the "Products") that appears to be that of an independent third party, when it in fact is not:

5. This false and misleading Seal currently appears on the following of Defendants' Products:

 

Select Edition
Because We Give a Chip!
10% of profits to charity
DEEP RIVER
SNACKS
All Dressed Up
Flavored Kettle Cooked Potato Chips
NON GMO
NET WT. 8 OZ (226g)

Select Edition
Because We Give a Chip!
10% of profits to charity
DEEP RIVER
SNACKS
Pink Himalayan Salted
Kettle Cooked Potato Chips
NON GMO
NET WT. 8 OZ (226g)

Select Edition
Because We Give a Chip!
10% of profits to charity
DEEP RIVER
SNACKS
Honey BBQ
Flavored Kettle Cooked Potato Chips
NON GMO
NET WT. 8 OZ (226g)

6. In recent years, consumers have become significantly more aware of, and sensitive to, products that have been approved by independent third parties, and they buy those products based upon the seals of the independent third parties.

7. Additionally, consumers have become significantly more aware of, and sensitive to, genetically modified organisms ("GMOs") in their food. Many consumers want to avoid GMOs for a variety of reasons, including, but not limited to, GMOs' possible negative impact on the environment. As a result, many consumers try to buy products that are not derived from GMOs, and a movement has developed demanding consumer products that have non-GMO ingredients.

8. In an attempt to meet consumers' demand for non-GMO products, an industry of independent, third-party validation companies has developed. These independent companies review the ingredients in products and assure consumers with their seal that the products do not contain GMOs and do not come from animals fed GMO food. Thus, obtaining the approval from an independent third party allows companies to obtain an advantage in the marketplace over their competitors, in order to sell more products and charge higher prices.

9. Recognizing the value of independent certification in the marketplace, the Federal Trade Commission ("FTC") has warned companies against making representations involving independent certification because they are misleading to consumers and has issued guidelines for companies to follow in order not to deceive consumers. *See* 16 C.F.R. § 260.1. As stated in the FTC guidelines against deceptive marketing regarding "Certifications and Seals of Approval":

> ***It is deceptive to misrepresent, directly or by implication, that a product, package, or service has been endorsed or certified by an independent third party.***

16 C.F.R. § 260.6(a) (emphasis added).

10. In violation of these principles, Defendants have represented to consumers that several of the products they sell have been verified by an independent third party as not containing GMO ingredients, by affixing a Non GMO Ingredients Seal on the Products.

11. Unfortunately for consumers, the Non GMO Ingredients representations by Defendants are false and misleading. Based upon counsel's investigation, the truth is that the Non GMO Ingredients Seal is not a designation bestowed by a non-profit group, or even a neutral third party, ***but instead is the work of Defendants themselves***. In other words, the Non GMO Ingredients Seal of approval is nothing more than Defendants touting their own Products.

12. In developing the Non GMO Ingredients seal, Defendants intentionally mimicked the appearance of an independent verifier's seal, such as the seal of the Non-GMO Project.

13. The Non-GMO Project, headquartered in Bellingham, Washington, is a not-for-profit organization founded in 2007 that bases its work upon a "rigorous scientific foundation and world-class technical support." *See History*, WWW.NONGMOPROJECT.ORG (2016), https://www.nongmoproject.org/about/history/. The Non-GMO Project works with the Global ID Group, which are "the world leaders in non-GMO testing, certification, and consulting." *Id.*

14. The Non-GMO Project runs the Product Verification Program, which verifies that products are not derived from GMO crops and verifies that milk and meat are not derived from animals that were fed GMO crops. The Non-GMO Project's Product Verification Program is widely recognized and has more than 3,000 verified brands, representing over 43,000 products and more

than $19.2 billion in sales. *Id.*

15. If a company's product meets the Non-GMO Project standard, the product receives a seal of approval that it may place on the front of the product packaging. *See* Image 1.

16. Looking to profit off consumer desire for independently validated products, Defendants have created a deceptive Non GMO Ingredients Seal of approval label that mimics the Non-GMO Project seal. *See* Image 2.

  

*Image 1*          *Image 2*

17. As seen below, both of these seals are used prominently to market food, indicating to consumers that the products have been validated by independent parties as being free of GMOs:

 

18. Moreover, ingredients that constitute many of the Products are derived from GMOs. For example, Defendants' Products that contain dairy come from cows fed GMO grains. This violates the Non-GMO Project standard, which ***does not allow for its seal of approval to be placed on dairy-based products that could be from animals fed GMO feed***. *See Animal-Derived Ingredients*, WWW.NONGMOPROJECT.ORG (2016), https://www.nongmoproject.org/high-risk/animal-derived-ingredients/.

19. Defendants avoid the Non-GMO Project's feed standard by using their own, self-created Non GMO Ingredients Seal, thereby creating confusion and deceiving consumers. Defendants' own "standard" allows for the use of GMO feed for dairy animals. The Non-GMO Project's independent standard does not.

20. As a result of this deceptive label, consumers paid a significant premium to purchase

non-GMO Products to avoid the well-known health and environmental risks associated with GMO products. Consequently, for the reasons given above, consumers did not receive the benefit of the bargain when they purchased the Products.

21. Plaintiff brings this suit to now end Defendants' deceptive practice and to recover the ill-gotten gains obtained by Defendants through this deception.

## PARTIES

**Plaintiff**

22. Plaintiff Darren Wong is an adult resident of San Francisco, California.

23. Plaintiff purchased Defendants' Cheddar Horseradish and Sour Cream and Onion Products containing the Non GMO Ingredients Seal from approximately October 2019 to March 2020 in San Francisco.

24. When given a choice between comparable products, Plaintiff purposefully chooses non-GMO products when making purchasing decisions and relies on packaging representations to determine if products are certified as non-GMO by an independent, third-party verifier.

25. The packing of the Product that Plaintiff purchased contained the Non GMO Ingredients Seal.

26. Plaintiff saw and read the Non GMO Ingredients Seal prior to purchasing the Product.

27. Plaintiff believed the Product Plaintiff bought was verified to be non-GMO by an independent third-party verifier. Plaintiff relied on the Non GMO Ingredients Seal in making Plaintiff's purchase decisions and would not have purchased the Product had Plaintiff known the Non GMO Ingredients representation was deceptive because the Product were not in fact verified by an independent third party.

28. The Product that Plaintiff received was not in fact verified by an independent third party and did not meet the standards of independent third-party verification companies such as the Non-GMO Project.

29. Had Defendants not labeled the Products using the false and misleading Non GMO Ingredients representation, Plaintiff would not have been willing to buy the Products at all, or pay

the same amount for the Products, and, consequently, would not have been willing to purchase the Products.

30. Plaintiff purchased more of, or paid more for, the Products than Plaintiff would have had Plaintiff known the truth about the Products.

31. The Products Plaintiff received were worth less than the Products for which Plaintiff paid. Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

32. Plaintiff is likely to encounter the Products, including the Non GMO Ingredients Fake Seal, again on routine trips to the local grocery store, since Defendants continue to market and sell the Products.

33. If Plaintiff knew the Product labels, including the Non GMO Ingredients Seal, were truthful and non-misleading, Plaintiff would continue to purchase the Products in the future. At present, however, Plaintiff cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

**Defendant Old Lyme Gourmet Company**

34. Defendant Old Lyme Gourmet Company, doing business as Deep River Snacks, is a corporation organized under the laws of Connecticut.

35. Old Lyme Gourmet Company's headquarters are located at 16 Grove Street, Deep River, Connecticut 06417.

**RULE 9(b) ALLEGATIONS**

36. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

37. WHO: Defendants made material misrepresentations and omissions of fact in the labeling, packaging, and marketing of the Products.

38. WHAT: Defendants made material misrepresentations and omissions by affixing the Non GMO Ingredients Seal of approval to lead consumers to believe the Products have been certified as not having GMO ingredients by a third party rather than Defendants themselves.

However, the Non GMO Ingredients Seal in question is not a designation bestowed by a neutral third party, but instead is the creation of Defendants. Defendants intentionally mimicked the seal of a neutral third-party verifier to tout their own Products.

39. WHEN: Defendants made the material misrepresentations and omissions detailed herein continuously throughout the applicable limitations period.

40. WHERE: Defendants' material misrepresentations and omissions were made, *inter alia*, on the labeling and packaging of the Products.

41. HOW: Defendants made written misrepresentations and failed to disclose material facts on the labeling and packaging of the Products, as detailed herein.

42. WHY: Defendants engaged in the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for the Products. Defendants profited by selling the Products to millions of unsuspecting consumers nationwide, capitalizing on the growing demand for certified non-GMO products.

**CLASS ALLEGATIONS**

43. Plaintiff brings this action on behalf of the following Class pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> All persons who purchased any of Defendants' Products bearing the Non GMO Ingredients Seal on the label during the period of October 12, 2016 to time of judgment after trial.
>
> Excluded from the Class are: (a) Defendants, Defendants' board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures

44. Plaintiff reserves the right to alter the Class definitions as Plaintiff deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of this

District, and applicable precedent allow.

45. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

**Numerosity—Rule 23(a)(1)**

46. Based on the annual sales of the Products and the popularity of the Products, it is readily apparent that the number of consumers in the Class is so numerous that the individual joinder of all of its members is impracticable, if not impossible. Due to the nature of the trade and commerce involved, Plaintiff believes the total number of Class members is in the thousands and that members of the Class are geographically dispersed across the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

**Commonality and Predominance—Rule 23(a)(2) and (b)(3)**

47. Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class.

48. The common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

    (a) whether Defendants labeled, marketed, advertised, and/or sold the Products to Plaintiff and those similarly situated using false, misleading, and/or deceptive statements or representations;

    (b) whether Defendants misrepresented material facts in connection with the sales of the Products;

    (c) whether Defendants participated in and pursued the common course of conduct complained of herein;

    (d) whether Defendants' labeling, marketing, advertising, and/or selling of the Products with a Non GMO Ingredients Seal on the label constitute an unfair

or deceptive consumer sales practice; and

(e) whether Defendants were unjustly enriched.

**Typicality—Rule 23(a)(3)**

49. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased a Product bearing the Non GMO Ingredients Seal in a typical consumer setting and sustained damages from Defendants' wrongful conduct. The claims of the members of the class arise from the same course of conduct by Defendants, and the relief sought is common to Plaintiff and the Class members.

50. Furthermore, there are no defenses available to Defendants that are unique to Plaintiff.

**Adequacy of Representation—Rule 23(a)(4)**

51. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests that conflict with those of the Class.

52. Plaintiff has retained counsel competent and experienced in litigating complex class actions. Undersigned counsel have represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive business practices.

**Superiority—Rule 23(b)(3)**

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is impracticable. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice. Furthermore, given the large number of

consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Declaratory and Injunctive Relief—Rule 23(b)(2)**

54. This action is maintainable as a class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief respecting the Class as a whole.

**Notice**

55. Plaintiff and Plaintiff's counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

**FIRST CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200 *et seq.* – Unlawful Conduct Prong of the UCL)**

56. Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

57. California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

58. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

a. 21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material"; and

b. 21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement.

59. Defendants' conduct also violates California's Environmental Marketing Claims Act.

60. Defendants' conduct is further "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA"), as discussed in the claims below.

61. Each of the challenged statements made and actions taken by Defendants violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

62. Defendants leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

63. Defendants' deceptive advertising caused Plaintiff and members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Products over other products that are less expensive. Had Plaintiff and the members of the Class been aware of the Defendants' false and misleading advertising tactics, they would not have purchased the Products at all, or would have paid less than what they did for it.

64. In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

65. Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200, *et seq*. – Unfair and Fraudulent Conduct Prong of the UCL)**

66. Plaintiff incorporates by reference all of the allegations of the preceding paragraphs as if fully set forth herein.

67. California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

68. The false and misleading labeling of the Products, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct.

69. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute "fraudulent" business acts and practices, because Defendants' conduct is false and misleading to Plaintiff and members of the Class.

70. Defendants either knew or reasonably should have known that the claims and statements on the labels of the Products were likely to deceive consumers.

71. In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

72. Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising)**

73. Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

74. California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

75. As alleged herein, Defendants, in its labeling of the Products, makes "false [and] misleading advertising claim[s]," as it deceives consumers as alleged above.

76. In reliance on these false and misleading advertising claims, Plaintiff and members of the Class purchased the Products.

77. Defendants knew or should have known that the labeling and marketing was likely to deceive consumers.

78. As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

**FOURTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Civil Code §§ 1750, *et seq.* –**
**Consumers Legal Remedies Act)**

**(INJUNCTIVE RELIEF ONLY)**

79. Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

80. The CLRA adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

81. Defendants' policies, acts, and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

- Section 1770(a)(2), which prohibits misrepresenting the source, sponsorship, approval, or certification of goods or services.
- Section 1770(a)(5) which prohibits misrepresenting the affiliation, connection, or association with, or certification by, another.
- Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits or ingredients that they do not have;
- Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;
- Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and
- Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

82. As a result, in accordance with Cal. Civ. Code section 1780(a)(2), Plaintiff and members of the Class have suffered irreparable harm and are entitled to equitable relief in the form of an order:

Enjoining Defendants from continuing to engage in the deceptive practices described above; and

Requiring Defendants to provide public notice of the true nature of the Products.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Plaintiff and other members of the proposed Class herein, prays for judgment and relief on all of the legal claims as follows:

A. An order certifying that the action may be maintained as a class action and requiring Defendants to bear the cost of class notice;

B. An order enjoining Defendants from pursuing the policies, acts and practices complained of herein;

C. An order compelling Defendants to destroy all misleading and deceptive advertising materials and packaging;

   D. An order requiring Defendants to pay restitution to Plaintiff and all members of the Class;

   E. An order requiring Defendants to pay actual damages to Plaintiff and all members of the Class (except for the claim brought for violation of the CLRA, as Plaintiff only seeks injunctive relief pursuant to the CLRA in this complaint);

   F. Pre-judgment interest from the date of filing suit;

   G. Costs, expenses, and reasonable attorneys' fees; and

   H. Such other and further relief as the Court may deem necessary or appropriate.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all causes of action so triable.

Dated: October 12, 2020

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*